# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **Alexis Nicole Scayola,** | ) | **Case No. 23-10956 JGR** |
| **SSN: xxx-xx-9215** | ) | **Chapter 7** |
| | ) | |
| | ) | |
| | ) | |
| **Debtor** | ) | |

## DEBTOR'S OBJECTION TO EUROTAINER US INC.'S MOTION FOR RELIEF FROM STAY

Comes now, David M. Serafin, counsel for Debtor, Alexis Nicole Scayola, who respectfully states as follows:

1. In Schedule F of the Bankruptcy Schedules, Debtor Alexis Scayola listed an alleged debt owed to Eurotainer US, Inc. ("Eurotainer") which both at the time of filing and to this day is fully disputed.

2. The mere fact that the only other unsecured debt listed in this case is a non-dischargeable student loan hardly means lack of good faith on behalf of Ms. Scayola who continues to believe she is an "honest but unfortunate debtor."

3. Ms. Scayola filed the current Chapter 7 case simply because she lacks any financial resources to continue to defend Eurotainer's baseless but very prolonged lawsuit which often requires Ms. Scayola to travel to Texas for depositions and to respond to other discovery requests. Ms. Scayola is NOT represented in the Texas state court case (as previous counsel withdrew due to – ironically – non-payment of attorney fees – see Debtor's Exhibits 1 & 2) and it's very doubtful she can afford to hire competent counsel (or really *any* counsel) for the July 24, 2023 trial at this late juncture. Ms. Scayola estimates that she will need to spend at least $30,000 that she does not have and cannot obtain from any third party to litigate the Texas state court case (see docket no. 1 – Schedule B).

4. In other words, if relief from stay is granted and Ms. Scayola is required to defend the Texas state court action, she will be required to incur at least $30,000 of attorney fees (in cash) for such defense. She has no insurance to cover her defense costs, and no other party has offered to cover these defense costs; thus it is her position that granting such relief would create a significant hardship. In addition, Eurotainer can still litigate the liability

1

and damage issues with any other defendant without the necessity of continuing to join Ms. Scayola as a party..

5. Schedule I filed in this case shows gross annual income of $80,307.60 which barely would be above median income if this was a primarily consumer debt case. (Ms. Scayola filed this as a primarily non-consumer debt case per 11 U.S.C. § 707(b)(2)).

6. The Bankruptcy Court has original and exclusive jurisdiction over the issue of dischargeability of alleged debt claimed by Eurotainer. If Eurotainer believes that Ms. Scayola has engaged in fraud, larceny, theft or any willful misconduct, the property remedy (instead of relief from stay) is to file an Adversary Proceeding under 11 U.S.C. § 523 no later than the June 9, 2023 Court Ordered deadline. If there is no Bankruptcy Court finding against Ms. Scayola under any provision of 11 U.S.C. § 523, then any alleged debt owed to Eurotainer will be fully discharged which would provide Ms. Scayola with the financial fresh start she seeks.

7. Ms. Scayola vehemently disagrees with Eurotainer's introductory statement that "the claims are so related and intertwined that the state Court in Texas may not be able to grant complete relief to the parties absent relief from stay." Ms. Scayola is a completely different person than her father Marcelo Scayola who is the primary defendant in the underlying Texas state court litigation. (Ms. Scayola was not even listed as a defendant in that case until close to 11 months after commencement of the original Complaint.) The state Court in Texas can absolutely adjudicate the rights of Marcelo Scayola and/or any other co-defendant while the current Bankruptcy automatic stay in Colorado simultaneously protects Ms. Scayola. Ms. Scayola continues to represent that she lacked any knowledge of any alleged fraudulent conduct of any other party to that lawsuit and that she has literally nothing to do with the allegations made.

8. Regarding Paragraph 8 of Eurotainer's Motion for Relief from the Automatic Stay, Ms. Scayola represents she was initially not made aware of any discovery sanctions referenced in Exhibit B and Exhibit C due to ineffective assistance of prior counsel in that case (before he withdrew as counsel due Ms. Scayola's inability to continue to pay attorneys fees). In fact, Ms. Scayola (in response to multiple subpoenas) has produced all of her financial records to Eurotainer since around 2018.

9. Ms. Scayola also denies any allegations of conspiring with her father or with any other party, to commit any type of tort against Eurotainer. Ms. Scayola further denies aiding and abetting any other defendant in the Texas state court case.

2

10. Ms. Scayola also represents that her father Marcelo Scayola has retained separate counsel in Texas to file his own Chapter 7 case (which has not yet been filed as of the date of this Objection).

11. The automatic stay generally stays "litigation, enforcement of liens, and other actions, be they judicial or otherwise, which would affect or interfere with property of the estate, of the debtor, or which is in the custody of the estate." In re Jim's Maint. & Sons Inc. , 418 Fed.App'x 726, 728 (10th Cir. 2011) (quoting Pursifull v. Eakin , 814 F.2d 1501, 1504 (10th Cir. 1987).

12. The automatic stay is intended "to prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts. The stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another." In re Curtis , 40 B.R. 795, 798 (Bankr. D. Utah 1984).

13. Bankruptcy courts may modify the automatic stay for "cause." § 362(d)(1). The Tenth Circuit has stated that because "there is no clear definition of what constitutes 'cause,' discretionary relief from the stay must be determined on a case by case basis." Chizzali v. Gindi (In re Gindi), 642 F.3d 865, 872 (10th Cir. 2011), overruled on other grounds, TW Telecom Holdings Inc. v. Carolina Internet Ltd. , 661 F.3d 495 (10th Cir. 2011), quoting Pursifull , 814 F.2d at 1504. Such a finding is considered a finding of fact, reversible only if "clear error" was committed. In re JE Livestock, Inc. , 375 B.R. 892, 893-94 (10th Cir. BAP 2007).

14. In addition to the *Curtis* factors cited by Eurotainer, a newer set of factors were established in In re Crespin , 581 B.R. 904 (Bankr. D.N.M. 2018)..." In re Bridge, 600 B.R. 98 (Bankr. N.M. 2019) in which it identified certain of the *Curtis* factors, and certain other factors, that often are the most relevant when determining whether to modify the automatic stay to allow a party to proceed with pending litigation in another court:

    (a) Whether the nonbankruptcy court is a specialized tribunal;

    (b) Whether granting stay relief would hinder or delay estate administration;

    (c) Whether the facts of the matter require a deviation from the Court's core function of allowing or disallowing claims;

    (d) Whether lifting the stay would promote judicial economy;

(e)  Whether it would be less expensive for the parties to litigate in bankruptcy court;

(f) Whether lifting the stay would prejudice other creditors;

(g)  The movant's likelihood of prevailing in the litigation; and

(h) Whether the "balance of the hurt" weighs in favor of or against stay relief.

15. In the current case, the Texas state court is not a specialized tribunal but more of a general court serving the jurisdictional needs of the local county.  The Bankruptcy Court in Colorado, on the other hand, is much better suited to determine 11 U.S.C. § 523 issues concerning whether any type of intentional tort has taken place and any accompanying dischargeability finding.

16. Additionally, judicial economy heavily weighs in Ms. Scayola's favor.  Ms. Scayola is – at most – only a collateral party to the Texas state court litigation whereas her father is the primary defendant (and at one time in the case the sole defendant).  Further, Ms. Scayola lives and is gainfully employed in Colorado and faces severe financial and other hardships (especially without any insurance or current Texas counsel) if forced to (yet again) travel to Texas to continue to litigate in perpetuity against Eurotainer.  By contrast, as Eurotainer has *already* hired competent Bankruptcy counsel (who is now already presumably familiar with the legal issues) in Colorado to request relief from stay, any standard non-dischargeability proceeding can easily be litigated in Colorado.

WHEREFORE, Debtor respectfully requests that this Court deny in its entirety Eurotainer's Motion for Relief from Stay filed on May 2, 2023, at docket no. 19.  In the alternative, Debtor requests that if any Texas state court judgment is ultimately entered against her, that Eurotainer is prohibited from execution or taking any collection action against Debtor or the property of Debtor until or unless a determination of non-dischargeability is made in the Bankruptcy Court in Colorado.

Dated this 24th day of May 2023

/s/ David M. Serafin
David M. Serafin, #33686
501 S. Cherry St., Ste. 1100
Denver, CO 80246
(303) 862-9124
david@davidserafinlaw.com

CERTIFICATE OF MAILING

The undersigned hereby certifies that on the 24th day of May 2023, I served a copy of the foregoing DEBTOR'S OBJECTION TO EUROTAINER US INC.'S MOTION FOR RELIEF FROM STAY by ECF service to the following:

David Wadsworth
Ch. 7 Bankruptcy Trustee

Cohen & Cohen, P.C.
Attorneys for Eurotainer US Inc.

/s/ David M. Serafin